**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION**

| | | |
|---|---|---|
| TX DIRECT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| FIRST DATA MERCHANT SERVICES LLC | ) | |
| and WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Comes now Plaintiff TX Direct, LLC ("TX Direct") and states for its Complaint against First Data Merchant Services LLC ("FDMS") and Wells Fargo Bank, N.A. ("Wells Fargo" and, together with FDMS, "Servicers") for material breaches of a Merchant Program Processing Agreement between them (the "Processing Agreement") as follows:

**Introduction**

1.       On September 19, 2022, concurrent with Hurricane Fiona striking TX Direct's Puerto Rico operations center, Servicers terminated TX Direct's access to the "Boarding Portal" as defined below.  In so doing, Servicers have materially breached the Processing Agreement by (a) prohibiting TX Direct from (i) completing applications and agreements for new merchants, (ii) paying the "Minimum Fees" as defined below to Servicers, and (iii) complying with its other obligations under the Processing Agreement, and (b) failing and refusing to comply with Servicers' obligations under the Processing Agreement, TX Direct has suffered, and continues to suffer, significant long-term damages and is entitled to its actual damages from Servicers for those material breaches in an amount to be proven at trial, in excess of $75,000.

**Parties and Jurisdiction**

2.      TX Direct is a New York limited liability company with its principal place of business located in Bartlett, Tennessee.  TX Direct has a single member, a trust, whose trustee is located in New Jersey.

3.      FDMS is a Florida limited liability company with its principal place of business located in Atlanta, Georgia.  FDMS has a single member, First Data Corporation, which is a Delaware corporation with its principal place of business located in Atlanta, Georgia.

4.      Wells Fargo is a national banking association with its main office and principal place of business located in San Francisco, California.

5.      The matter in controversy, exclusive of interest and costs, exceeds $75,000, and the parties are diverse.  As such, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

**Factual Allegations**

*The Merchant Processing Industry*

6.      In order to accept credit cards, debit cards, other types of electronic payments through the Visa, Mastercard, American Express, Discover, and similar networks ("Networks") and related products and services, businesses (referred to herein as "merchants") must enter into merchant processing agreements with a financial institution (known as a "sponsor bank") that is a member of the Networks.  In addition to a sponsor bank, a "merchant acquirer," known as a "independent sales organization" (or "ISO"), is typically party to the merchant processing agreements.  ISOs are also registered and sponsored with the Networks by a Network member. Wells Fargo is a Network member.  TX Direct is an ISO and registered with the Networks by Wells Fargo, its sponsor bank.

7.      ISOs solicit merchants that are interested in accepting payment card transactions from their cardholder customers and are thus in need of access to Networks for payment processing services.   ISOs obtain applications, underwriting information, and agreements for providing payment processing services to new merchants.   They assist prospective merchants in completing those applications and agreements.

8.      An accepted merchant enters into a merchant processing agreement with the sponsor bank and, in almost all circumstances, an ISO.   It then becomes "boarded" and begins accepting payment card transactions and using related payment products and services.

9.      Once merchants are boarded, ISOs provide payment processing services to merchants, together with various other services, including risk management, fraud detection, customer service, technical support and assisting merchants in disputes with cardholders, directly or through their relationship with payment card processors and other technology and infrastructure providers.

### *The Processing Agreement and Servicers' Material Breaches*

10.     TX Direct, FDMS, and Wells Fargo (as assignee of BancorpSouth Bank) entered into the Processing Agreement on February 28, 2007, for providing certain payment processing services and related payment products and services to small- and medium-sized merchants.   Since then, those parties amended the Processing Agreement several times, most recently on August 8, 2022.   As used herein, the term "Processing Agreement" includes all amendments to the Processing Agreement.

11.     Under Section 4.1 of the Processing Agreement, TX Direct must perform marketing and sales on behalf of itself and Servicers and, in particular, solicit applications and agreements from prospective eligible merchants.   To provide those services and products to accepted

merchants, TX Direct and Wells Fargo enter into merchant processing agreements with merchants. TX Direct boards accepted merchants through the FDMS "AccessOne" online portal (the "Boarding Portal") to enable them to begin accepting cardholder transactions via the Networks and access related products and services.

12.     Servicers provide the technology and back-office processing services that enable TX Direct to board such merchants and provide those products and services to them.   In consideration, TX Direct pays Servicers fees charged based on TX Direct's merchant count, volume of merchant card transactions, and related criteria under the Processing Agreement.

13.     Indeed, under Section 2.2 of the Processing Agreement, in each year, TX Direct must pay fees to Servicers equal to at least as much as it paid in the prior year (the "Minimum Fees").  Merchants inevitably go out of business or move to other servicers.  As a result of such attrition, merchant count and transaction volume (and thus fees payable to Servicers) inevitably decrease without the addition of new merchants.  Because TX Direct must pay Servicers for any shortfall in the Minimum Fees, it *must* regularly add new merchants.

### Servicers' Material Breaches

14.     But beginning on September 19, 2022, concurrent with Hurricane Fiona striking TX Direct's Puerto Rico operations center, Servicers terminated TX Direct's access to the Boarding Portal, although the Processing Agreement remained in effect.  In so doing, Servicers have made it impossible for TX Direct to complete applications and agreements for new merchants, via the Boarding Portal or otherwise, and comply with its other obligations, in material breach of the Processing Agreement.

15.     Servicers have materially breached other obligations under the Processing Agreement.  Under Section 4.2 of the Processing Agreement and pursuant to the course of dealing

between the parties, TX Direct could, via the Boarding Portal, automatically enroll and activate merchants that meet agreed-upon underwriting criteria without any advance review or approval by Servicers.  TX Direct cannot since Servicers terminated TX Direct's access to the Boarding Portal.

16.    Further, under Section 4.2 of the Processing Agreement and pursuant to the course of dealing between the parties, Servicers must assist TX Direct with its underwriting of prospective merchants.  More particularly, via the Boarding Portal, Servicers check prospective merchants against the industry's "Member Alert To Control High-Risk" ("MATCH") merchant list and other prohibition lists maintained by the Networks.  Having terminated TX Direct's access to the Boarding Portal, Servicers no longer do so, in material breach of the Processing Agreement.

17.    One of the Servicers, FDMS, contends the Processing Agreement is expired.  It is not.  TX Direct, FDMS, and Wells Fargo had entered into a Renewal Amendment to the Processing Agreement on December 28, 2017 (the "Renewal Amendment").  The Renewal Amendment re-defined the "Effective Date" of the Processing Agreement as December 1, 2017, and provided that "The initial term of [the Processing Agreement] shall be thirteen (13) years commencing on the Effective Date of this Agreement[.]"  As such, the Processing Agreement's term continues until November 30, 2030, and it is not expired.

18.    In any event, even if the term of the Processing Agreement might have expired on April 30, 2022, under the Renewal Amendment as FDMS contends — it did not.  Under Section 10.1 of the Processing Agreement, "unless either [TX Direct] or SERVICERS give written notice of non-renewal to the other at least ninety (90) days prior to the expiration of the then-current term," the Processing Agreement renews for another two-year period.  One of the Servicers, FDMS, had provided its own notice of non-renewal to TX Direct, but the other Servicer, Wells Fargo, did not.  TX Direct has not received any communication from Wells Fargo.  Nor has FDMS

represented that it had any authority to bind or otherwise act on behalf of Wells Fargo.  As such, the Servicers did not provide effective notice of non-renewal and the term automatically renewed until not earlier than April 30, 2024.

19.     Further, even after FDMS' purported expiration date, Servicers continued to perform their obligations under the Processing Agreement until their breach on September 19, 2022.

20.     Servicers even went so far as to propose, on August 1, 2022, after FDMS' purported expiration date, an amendment to the Processing Agreement.  Immediately above the signature line of such amendment, Servicers included the phrase "[ ] all terms and conditions of the Agreement will remain in full force and effect and likewise apply to this Amendment." FDMS executed this amendment on August 2, 2022, and Wells Fargo executed this amendment on August 8, 2022.

21.     For these reasons, the Processing Agreement continues unexpired, and Servicers must reactivate TX Direct's access to the Boarding Portal.

22.     Because Servicers have materially breached the Processing Agreement by terminating TX Direct's access to the Boarding Portal and thereby (a) prohibiting TX Direct from (i) completing applications and agreements for new merchants, (ii) paying the Minimum Fees to Servicers, and (iii) complying with its other obligations under the Processing Agreement, and (b) failing and refusing to comply with Servicers' obligations under the Processing Agreement, TX Direct has suffered, and continues to suffer, significant long-term damages and is entitled to its actual damages from Servicers for those material breaches in an amount to be proven at trial, in excess of $75,000.

### Claims

**Count One**
(Breach of Contract)

23.     Plaintiff incorporates and restates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth below.

24.     The Processing Agreement is a valid, enforceable, and unexpired contract between TX Direct, FDMS, and Wells Fargo.

25.     TX Direct performed all obligations and conditions required by the Processing Agreement.  Servicers have not.

26.     Servicers have materially breached the Processing Agreement.  On September 19, 2022, Servicers abruptly terminated TX Direct's access to the Boarding Portal.  In so doing, Servicers are prohibiting TX Direct from (i) completing applications and agreements for new merchants, (ii) paying the Minimum Fees to Servicers, and (iii) complying with its other obligations under the Processing Agreement, in material breach of the Processing Agreement.  In addition, Servicers are failing and refusing to comply with Servicers' obligations under the Processing Agreement.

27.     As a result, TX Direct has suffered, and continues to suffer, significant long-term damages.  TX Direct is entitled to its actual damages from Servicers for those material breaches in an amount to be proven at trial, in excess of $75,000.

WHEREFORE, TX Direct respectfully requests that the Court enter a judgment in its favor and against Servicers, awarding among other things, its actual damages, plus pre-judgment interest, and such other relief to which TX Direct may be entitled, as a matter of law or equity, or which the Court determines to be just and proper.

Respectfully submitted,


s/Derek W. Edwards
Derek W. Edwards (TN BPR No. 021455)

WALLER LANSDEN DORTCH & DAVIS, LLP
Nashville City Center
511 Union Street, Suite 2700
Nashville, Tennessee  37219
Telephone:      (615) 244-6380
Facsimile:      (615) 244-6804
Email:          derek.edwards@wallerlaw.com

*Attorneys for Plaintiff TX Direct, LLC*