## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## MEMPHIS DIVISION

| | |
|---|---|
| TX DIRECT, LLC | No. 2:22-CV-02685-TLP-tmp |
| *Plaintiff,* | |
| v. | **DEFENDANTS FIRST DATA** |
| | **MERCHANT SERVICES LLC'S AND** |
| FIRST DATA MERCHANT SERVICES | **WELLS FARGO BANK, N.A.'S** |
| LLC and WELLS FARGO BANK, N.A. | **MEMORANDUM IN SUPPORT OF** |
| | **THEIR MOTION TO DISMISS** |
| *Defendants* | |

Defendants First Data Merchant Services LLC ("First Data") and Wells Fargo Bank, N.A.

("Wells Fargo") (collectively "Defendants") seek dismissal of TX Direct, LLC's ("TX Direct")

Complaint under Federal Rule of Civil Procedure 12(b)(6), respectfully showing the Court as

follows:

## I.      INTRODUCTION

On February 28, 2007, TX Direct, First Data Merchant Services Corporation[1], and

BancorpSouth Bank[2] entered into a Merchant Program Processing Agreement whereby TX Direct

agreed to perform certain marketing and sales services on behalf of Defendants (the "Agreement").

(Compl. ¶¶ 10, 11.) The Agreement contained an initial term of five years with automatic renewal

every two years:

> **10.1 Initial Term.** The initial term of this Agreement shall be <u>five (5)</u> Processing
> Years commencing on the Effective Date of this Agreement and ending on <u>April
> 30, 2012</u> unless terminated earlier as provided in this Section 10. The term of this
> Agreement shall automatically renew for successive terms of two (2) Processing

---

[1] Defendant First Data Merchant Services LLC is formerly known as First Data Merchant Services
Corporation.

[2] BancorpSouth Bank assigned its rights under the Agreement to Defendant Wells Fargo. (Compl.
¶ 10.)

Years unless either ISO or SERVICERS give written notice of non-renewal to the other at least ninety (90) days prior to the expiration of the then-current term.

(Agreement § 10.1, attached as **Exhibit A** (emphasis added).)[3]

On December 28, 2017, TX Direct, First Data, and Wells Fargo entered into a Renewal Amendment to the Agreement. (Compl. ¶ 17.) The Amendment modified Section 10.1 of the Agreement as follows:

10.1 Initial Term. The initial term of this Agreement shall be <u>thirteen (13)</u> Processing years commencing on the Effective Date of this Agreement and ending on <u>April 30, 2020</u>, unless terminated earlier as provided in this Section 10. The term of this Agreement shall automatically renew for successive terms of two (2) Processing Years unless either ISO or Servicers give written notice of non-renewal to the other at least ninety (90) days prior to the expiration of the then-current term.

(Amendment ¶ 2, attached as **Exhibit B** (emphasis added).)

Thereafter, on January 28, 2022, First Data provided written notice of non-renewal under Section 10.1, which terminated the Agreement as of April 30, 2022. (Jan. 28, 2022 Letter from First Data to TX Direct, attached as **Exhibit C**.)[4] Despite this, TX Direct brings a breach-of-contract claim because Defendants allegedly terminated TX Direct's access to certain systems under the Agreement on September 19, 2022. (Compl. ¶ 1.) But, since the Agreement was terminated, TX Direct has not and cannot state a claim for breach of contract.

---

[3] In considering a motion to dismiss, a district court may consider documents attached to the motion that are not attached to the complaint and need not convert the motion to one for summary judgment if those documents are referred to in the complaint and central to the plaintiff's claim. *Hall v. Prudential Ins. Co. of Am.*, No. 3:13-CV-707-PLR-HBG, 2014 WL 1513261, at *2 (E.D. Tenn. Mar. 14, 2014), report and recommendation adopted, No. 3:13-CV-707-PLR-BHG, 2014 WL 1513269 (E.D. Tenn. Apr. 15, 2014) ("In ruling on a Rule 12(b)(6) motion to dismiss, a court may consider the complaint, documents incorporated into the complaint by reference, matters of which a court may take judicial notice, and exhibits attached to the complaint."). Here, the Complaint expressly references and relies upon the Agreement, the Amendment, and the notice of non-renewal. Accordingly, those documents are attached hereto as Exhibits A-C. Exhibits A and B have been redacted due to the Agreement's confidentiality provision. Should the Court wish to see those complete documents, Defendants will be happy to file those documents under seal.

[4] The Court may consider this letter as it is incorporated into the Complaint. (Compl. ¶ 18 ("One of the Servicers, FDMS, had provided its own notice of non-renewal to TX Direct . . . .").)

2

## II.     ARGUMENT

To survive a motion to dismiss, a complaint must contain sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell v. Twombly*, 550 U.S. 554, 570 (2007). A plaintiff must include "more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678. A complaint that asserts "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor can a complaint survive if it is based upon "naked assertion[s] devoid of further factual enhancement." *Id.* at 557. Further, a court should not consider legal conclusions in determining whether the complaint has stated a claim for relief. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citations omitted). As *Iqbal* explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678, 129.

Here, TX Direct's breach-of-contract claim fails as a matter of law because the Agreement terminated prior to the supposed breach. *El-Nahal v. FA Mgmt., Inc.*, 5 N.Y.S.3d 201, 202 (2015) (explaining that existence of a contract is an essential element of a breach-of-contract claim).[5] TX Direct's Complaint presents certain arguments for why the Agreement is still in effect, however, each of these arguments fail as a matter of law. As set forth below, the TX Direct's arguments do not even make sense.

---

[5] The Agreement contains a New York choice-of-law provision. (Agreement § 12.7 ("This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to New York conflict laws.").)

### A.    The Agreement's Initial Term Expired on April 30, 2020.

The Amendment expressly provides:

Section 10.1 of the Agreement is deleted in its entirety and replaced with the following:

"10.1 Initial Term. The initial term of this Agreement shall be thirteen (13) Processing years commencing on the Effective Date of this Agreement and ending on April 30, 2020, unless terminated earlier as provided in this Section 10."

(Amendment ¶ 2.) Despite the clear language of the Amendment, TX Direct argues that since the Amendment - not the Agreement - defines "Effective Date" as December 1, 2017, the Agreement is in effect until November 20, 2030 (13 years after the Amendment's Effective Date) directly contrary to the plain language of the contract. (Compl. ¶ 17.)

First, amended Section 10.1 states: "The initial term of this Agreement shall be thirteen (13) Processing years commencing on the Effective Date of this Agreement and ending on **April 30, 2020**." In light of this express language, TX Direct's argument that the term expires over ten years later (November 20, 2030) is absurd.

Second, the Amendment "replaced" the Agreement's Section 10.1 and, therefore, the defined terms in the Agreement – not the Amendment – apply. In fact, the Amendment explains: "Capitalized terms used but not otherwise defined in this Amendment will have the meanings set forth in the Agreement." (Amendment ¶ 6.) And the Agreement defines "Effective Date" as February 28, 2007. (Agreement at p. 1.)

Finally, Section 10.1 clarifies that expiration is calculated from the "Effective Date of this **Agreement**," rather than the Effective Date of this *Amendment*. (*Compare* Amendment ¶ 2, *with* Amendment ¶ 1 ("The terms of this **Amendment** are effective as of December 1, 2017." (emphasis added).)

As such, the Agreement's initial term expired on April 30, 2020.

**B.**     **First Data's Notice of Non-Renewal was Sufficient.**

The Agreement provides for automatic renewal absent 90-days written notice:

> The term of this Agreement shall automatically renew for successive
> terms of two (2) Processing Years unless either ISO or Servicers
> give written notice of non-renewal to the other at least ninety (90)
> days prior to the expiration of the then-current term.

(Amendment ¶ 2.) TX Direct does not dispute that First Data provided a notice of non-renewal.

(Compl. ¶ 18; Ex. C.) Rather, TX Direct claims that since the Agreement states First Data and

Wells Fargo "will collectively be referred to as 'Servicers'" (Agreement at p. 1), both First Data

and Wells Fargo were required to provide notice of non-renewal. (Compl. ¶ 18.) This

interpretation, however, is contrary to the contract and New York law.

First, this interpretation is contrary to the contract's language. Specifically, the Agreement

provides: "As used in this Agreement . . . the plural shall include the singular . . . ." (Agreement §

12.13.) Accordingly, the term "Servicers" means either First Data or Wells Fargo.

Second, this interpretation is contrary to New York law. "Courts applying New York law

to contracts using the word 'and' look to the context in which the word is used to determine

whether it should be read in the conjunctive or disjunctive sense." *Spanski Enterprises, Inc. v.

Telewizja Polska S.A.*, 832 F. App'x 723, 725 (2d Cir. 2020 – Summary Order) (*citing Sasson v.

TLG Acquisition LLC*, 9 N.Y.S.3d 2, 4 (2015) (finding "no ambiguity" in a contract's use of the

word "and" in context); *Lamborn v. Nat'l Park Bank of N. Y.*, 208 N.Y.S. 428, 435 (1925), aff'd,

240 N.Y. 520, 148 N.E. 664 (1925) ("'And' is considered also as 'or,' unless the document shows

on its face that the word 'and' is to be liberally construed.") (emphasis added)); 22 N.Y. Jur. 2d

Contracts § 240 ("[I]t may be found that 'and' includes 'or' or that 'or' includes 'and,' as a

reasonable construction requires.")).

Here, TX Direct's interpretation of Section 10.1 (requiring Wells Fargo and First Data to agree on whether to execute a notice of non-renewal) creates an illogical result: Wells Fargo could bind First Data to the Agreement in perpetuity. For example, in *Spanski Enterprises, Inc. v. Telewizja Polska S.A.Eyeglasses*, the Second Circuit interpreted the following provision: "The term of this Agreement is 25 (twenty-five) years and it comes into effect on the date of its signing. TVP and SEI may extend its term by subsequent 10[-]year periods." SEI argued the provision allowed either TVP *or* SEI "to extend the Agreement's term independent of the wishes of the other party." In contrast, TVP argued the provision required mutual agreement to extend the term. The Second Circuit, applying New York law, agreed with TVP.

> [I]nterpreting the word "and" in Section 10.1 to include "or" would permit either party to unilaterally renew the contract for 10-year periods indefinitely, in effect creating a perpetual unilateral extension right. Even if we found Section 10.1's use of the word "and" ambiguous, we would not interpret it to create such a right "[i]n the absence of a clear provision" because, "under New York law, contracts which are vague as to their duration generally will not be construed to provide for perpetual performance." *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 237 (2d Cir. 2008). More generally, as the district court held, interpreting the contract to allow either party to bind the other indefinitely would be unreasonable. *See In re Lipper Holdings, LLC*, 1 A.D.3d 170, 766 N.Y.S.2d 561, 562 (2003) ("A contract should not be interpreted to produce a result that is absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties."). The parties' agreement to specific terms of years – an initial term of 25 years and possible extensions in 10-year increments – strongly suggests that they did not intend for either of them to be able to bind the other in perpetuity.

*Id.* The same logic applies here. If Section 10.1's use of the term "Servicers" is interpreted to mean First Data *and* Wells Fargo, then Wells Fargo could bind First Data in perpetuity because the Agreement would automatically renew every two years and, absent Wells Fargo's consent, First Data would be unable to terminate. This result is precisely the type the Second Circuit avoided in *Spanski Enterprises, Inc.*

## III.     CONCLUSION

TX Direct's theories have no basis in fact, law, or reason.  TX Direct has not (and cannot) plead the existence of an enforceable contract and, therefore, the Court should grant this motion and dismiss Plaintiff's Complaint.

Dated:  October 31, 2022                       POLSINELLI PC

*/s/ John W. Peterson*
John W. Peterson (#5394200)
Michael Malone (#031219)
401 Commerce Street, Suite 900
Nashville, TN  37219
Phone: (615) 259-1510
Fax: (615) 259-1573
John.peterson@polsinelli.com
mmalone@polsinelli.com

*Attorneys for Defendants*

7

86480329.6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served via ECF and electronic mail on all counsel of record this 31st day of October, 2022.

/s/ John W. Peterson

*Attorney for Defendants*

8