IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| TX DIRECT, LLC, | ) |
|    Plaintiff, | ) ) ) |
| v. | ) No. 2:22-cv-02685-TLP-tmp ) ) |
| FIRST DATA MERCHANT SERVICES LLC and WELLS FARGO BANK, N.A., | ) ) ) ) |
|    Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION TO STRIKE OR EXCLUDE THE
REPLY REPORT OF CHAD SALSBERY**

On January 24, 2025, Plaintiff TX Direct, LLC ("TX Direct") served First Data Merchant Services LLC ("First Data") and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively "Defendants") with the expert report of Mr. Chad Salsbery ("Initial Report"). (ECF No. 124-3.) In the Initial Report, Mr. Salsbery opined on TX Direct's damages resulting from Defendants' alleged breach of a contract. (ECF No. 124-5.) Counsel deposed Mr. Salsbery on February 11, 2025. (ECF No. 127-1 at PageID 3097.)

In turn, on February 21, 2025, Defendants served on TX Direct the rebuttal expert report of Mr. Adam Rabinowitz, which challenges many parts of the Initial Report. (ECF No. 124-10.) Then, on April 11, 2025, TX Direct served on Defendants a "Reply Report" of Mr. Salsbery. (*See* ECF No. 133 at PageID 3846.) The Reply Report is dated March 31, 2025. (ECF No. 127-4.)

On May 9, 2025, Defendants filed a document, naming it on the docket as "SEALED MOTION to Strike or Exclude Reply Report." (ECF No. 130.) But Defendants attached the

1

wrong document. (*See id.*) TX Direct then responded in opposition to the unfiled Motion. (ECF No. 133.) On June 23, 2025, the Court pointed out the error and allowed Defendants to fix the issue. (ECF No. 137.) The next day, Defendants filed the correct Motion to Strike or Exclude the Reply Report ("Motion to Strike"). (ECF No. 138-1.) Defendants also explained that the filing of the wrong document was an internal administrative error and that they served the correct document on TX Direct on May 9, 2025. (ECF No. 138.)

The Court will first set out some basic background information, then will take up the Motion to Strike.

## BACKGROUND

By way of background, this case is a dispute among participants in the credit card payment processing system—an independent sales organization ("ISO"), TX Direct, a processor, First Data, and an acquiring bank, Wells Fargo.[1] ISOs, like TX Direct, solicit and board new merchants for merchant accounts with processors and acquiring banks.[2] (ECF No. 131-1 at PageID 3758.) And, for many years, TX Direct performed this function for Defendants under a Merchant Program Processing Agreement ("Wholesale Agreement"). (*Id.* at PageID 3761.) In this arrangement, TX Direct added the new merchants to its portfolio ("Wholesale Portfolio") through a platform called AccessOne. (*See* ECF No. 125-6 at PageID 2288; ECF No. 131-1 at PageID 3763.) But on September 19, 2022, First Data cut off TX Direct's ability to board new

---

[1] The Court will summarize the facts here more fully in a forthcoming order on Defendants' Motion for Summary Judgment.

[2] A merchant that wishes to accept debit or credit cards must have a merchant account with an acquiring bank that has relationships with credit card networks like Visa and Mastercard. (ECF No. 131-1 at PageID 3757.) To process the card transactions, the acquirer often enters a contract with a "processor." (*Id.* at PageID 3758.) In turn, the processor and acquirer enter into contracts with ISOs, which solicit and board new merchants for merchant accounts with the processor and acquirer. (*Id.*)

merchants using AccessOne. (ECF No. 131-1 at PageID 3791.) That said, TX Direct still added around 100 merchants to its Wholesale Portfolio after the cutoff date. (*See* ECF No. 124-5 at PageID 1643.)

TX Direct sued Defendants, alleging that cutting off its boarding capabilities breached the Wholesale Agreement. (ECF No. 92 at PageID 960.) In both his Initial Report and Reply Report, Mr. Salsbery claims to measure TX Direct's damages from this alleged breach. (ECF Nos. 124-5, 127-4.) Mr. Salsbery calls these damages TX Direct's "diminution of value" damages. (ECF No. 124-5 at PageID 1641; ECF No. 127-4 at PageID 3471.)

In addition, Defendants have not paid TX Direct residuals for many of the merchants that it boarded after the cutoff date. And so, in his reports, Mr. Salsbery provides calculations for the amount of these unpaid residuals. (ECF No. 124-5 at PageID 1648; ECF No. 127-4 at PageID 3472.) The unpaid residuals calculations are distinct from the "diminution of value" calculations. (*See* ECF No. 124-5 at PageID 1648; ECF No. 127-4 at PageID 3472.)

As will be described later in this Order, there are many differences between the Initial Report and Reply Report. And, based on these changes, Defendants move to strike the Reply Report, arguing that the Reply Report is not a mere supplementation of the Initial Report. (ECF No. 138-1.) Rather Defendants suggest the Reply Report is best seen as a new expert opinion. (*Id.* at PageID 3891.) And Defendants point out that the deadline to disclose new expert opinions was January 24, 2025. (*Id.* at PageID 3890–91; *see* ECF No. 105.) Accordingly, Defendants ask the Court to strike the Reply Report. (ECF No. 138-1 at PageID 3890–91.)

## ANALYSIS

The Court now addresses the Motion to Strike. Along with contesting the Motion to Strike on its merits, TX Direct argues that the Motion to Strike is improper for procedural reasons. (*See* ECF No. 133.) The Court first takes up the procedural arguments.

I.      **Untimely and Failure to Consult**

TX Direct asserts that Defendants' Motion to Strike is untimely and that the Court should deny it. (ECF No. 133.) TX Direct explains that it served the Reply Report on Defendants on April 11, 2025, and that Defendants did not move to strike it until 28 days later, on May 9, 2025.[3] (*Id.* at PageID 3844.) But the Court does not view 28 days as a significant or problematic delay. From the Court's view, 28 days is a reasonable length of time between Defendants receiving the Reply Report and moving to strike it.

TX Direct further claims that Defendants should have moved to strike by April 18, 2025, which was the deadline for "F.R.E. 702/*Daubert* Motions to Exclude Experts" in the Scheduling Order. (ECF No. 119; ECF No. 133 at PageID 3844–45.) The Court disagrees. Defendants' Motion is not one discussing Federal Rule of Evidence 702, and it is not a *Daubert* Motion.[4] (*See* ECF No. 138-1 at PageID 3900.) In fact, Defendants' Motion does not discuss the Reply

---

[3] As noted above, the Motion to Strike was not actually filed on the docket until June 24, 2025. (ECF No. 138-1.) But TX Direct received a copy of it on May 9, 2025. (ECF No. 138.) And both Parties thought it was filed on May 9, 2025. (*See id.*; ECF No. 133.) Indeed, TX Direct responded to the unfiled motion. (ECF No. 133.)

[4] What is more, the Court sets the *Daubert* motion deadline partially based on the expert disclosure deadlines. Here, TX Direct's expert disclosure deadline was in January 2025 and Defendants' expert disclosure deadline was in February 2025. (ECF No. 105.) The *Daubert* motions were then due April 18, 2025, after the expert deposition deadline of April 8, 2025. (ECF No. 119.) Considering TX Direct did not disclose the Reply Report until April 11, 2025— which was after the expert deposition deadline, two and a half months after TX Direct's expert disclosure deadline, and two months after Mr. Salsbery's deposition—it would be unfair to apply the *Daubert* motion deadline to Defendants' Motion to Strike.

4

Report's reliability or relevance to the case. (*See id.*) Instead, Defendants move to strike or exclude the Reply Report because it is not proper under Federal Rule of Civil Procedure 26. (*See id.*) So to the extent that a deadline in the Scheduling Order applies to this type of motion, the Court considers the motion in limine deadline, which was July 7, 2025, as the applicable deadline.[5] (*See* ECF No. 147.) And Defendants' Motion to Strike was filed before that date.

TX Direct also argues that the Court should deny Defendants' Motion as it violates Local Rule 7.2(a)(1)(B). (ECF No. 133 at PageID 3845.) That Rule requires that a certificate of consultation be included with all motions, with exceptions not implicated here. *See* L.R. 7.2(a)(1)(B). The Rule further provides that the "[f]ailure to attach an accompanying certificate of consultation may be deemed good grounds for denying the motion." *Id.* TX Direct correctly points out that Defendants failed to include a certificate of consultation with their Motion. (*See* ECF No. 138-1.)

Including a Certificate of Consultation is an important step for litigants before the Court. It promotes civility and it helps streamline disputes. But given the circumstances here, the Court disagrees with TX Direct that this failure requires denying Defendants' Motion to Strike. Typically, the Court denies motions without prejudice when the parties fail to consult. Had the Court done so here, Defendants likely would have consulted, noted a lack of agreement and then filed the exact same motion.

To support its position, TX Direct notes that "such a conference would have revealed to Defendants Plaintiff's willingness to make its expert witness available for a second deposition regarding the Reply Report." (ECF No. 133 at PageID 3845.) Even so, the Court fails to see

---

[5] At the time the Motion to Strike was filed, the motion in limine deadline was June 30, 2025. (ECF No. 119.) Defendants' filing meets both deadlines.

5

how a conference would have stopped Defendants from filing the Motion to Strike or saved the Court the effort of deciding the Motion—which is one of the goals of this sort of rule. *See Bentley v. Highlands Hosp. Corp.*, No. cv 15-97-ART-EBA, 2016 WL 5867496, at *3 (E.D. Ky. Oct. 6, 2016) ("There is no reason to believe that conferral would have saved the Court much time or effort."). It is hard to imagine that Defendants would want an opportunity to depose TX Direct's witness again when they could move to strike the report. *See id.* ("[Plaintiff] contends that it could have resolved the defendants' concerns by allowing them to depose her experts again… But the suggestion that this accommodation would have resolved the defendants' concerns is hard to swallow."). What is more, discovery closed the very day that TX Direct provided the Reply Report to Defendants. And so, to allow Defendants to depose TX Direct's expert, the Court would need to reopen discovery. Then, to be fair to Defendants, the Court would need to allow Defendants' time to file a new *Daubert* motion. TX Direct sued here almost three years ago. The Court amended the Scheduling Order five times. To do so again under these circumstances would prejudice Defendants. The Court declines to do so.

The Court will now address the merits of Defendants' Motion to Strike.

## II.     Relevant Law

Rule 26(a)(2)(D) provides that a party should provide its expert disclosures at least 90 days before trial unless the Court sets a different deadline. And, in this case, the Court had set different deadlines. TX Direct needed to provide expert disclosures by January 24, 2025, and Defendants needed to provide their expert disclosures by February 14, 2025. (ECF No. 105.)

But a party may disclose another expert report after these deadlines if the report is either a rebuttal report or a supplemental report. Indeed, Rule 26 requires a party to "supplement or correct its disclosure" if the party "learns that in some material respect the disclosure ... is

incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). Furthermore, Rule 26 permits expert reports "intended solely to contradict or rebut evidence on the same subject matter identified by another party" to be filed after the initial disclosure deadline. Fed. R. Civ. P. 26(a)(2)(D)(ii). Rule 26 does not discuss sur-rebuttal reports.

Although Rule 26 permits supplemental reports and rebuttal reports, there are time limits on producing these types of reports. Unless the Court sets a different deadline, a supplemental expert report must be disclosed "in a timely manner" and no later than "the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e); *Bentley*, 2016 WL 5867496, at \*4. In this case, the Court set a supplementation deadline of April 11, 2025. (ECF No. 119.) And a party must disclose a rebuttal report within thirty days of the other party disclosing their expert report, unless a court order provides otherwise. Fed. R. Civ. P. 26(a)(2)(D)(ii). The Court never set a deadline for rebuttal reports. (*See* ECF Nos. 48, 85, 105, 117, 119.)

But this is not the end of the inquiry. "What happens if a party's supplemental or rebuttal disclosure is, in truth, neither supplemental nor rebuttal? Well, substance triumphs over form: The Court will look past the party's label and construe the report as an initial disclosure of an affirmative expert opinion under Rule 26(a)(2)(A)–(C)." *Bentley*, 2016 WL 5867496, at \*5. And, in this case, TX Direct needed to serve its affirmative expert disclosures by January 24, 2025. (*See* ECF No. 105.) This is important because "[if] a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

7

To determine whether the failure was harmless or substantially justified, courts within the Sixth Circuit apply the five-factor test from *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015). Those five factors are:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe*, 801 F.3d at 748. "The factors simply lend themselves to the task at the heart of Rule 37(c)(1): separating 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (citing *Bentley*, 2016 WL 5867496, at *10). The Court will next address how best to categorize Mr. Salsbery's Reply Report.

**III.    Type of Report**

TX Direct characterizes Mr. Salsbery's Reply Report as "a proper and timely rebuttal and permissible supplementation." (ECF No. 133 at PageID 3840 (capitalization modified).) As a preliminary matter, the Reply Report is not a rebuttal report. Because he responded to Mr. Salsbery's initial report, Mr. Rabinowitz's report is best described as a rebuttal report, not an affirmative expert report. (*See* ECF No. 124-10.) And so this means that Mr. Salsbery's "Reply Report" in response to Mr. Rabinowitz's report would be a rebuttal to a rebuttal report—in other words a sur-rebuttal report. The rules do not account for such an approach.

And TX Direct never clarifies whether the Reply Report is meant as a sur-rebuttal report or as a supplemental report. For example, TX Direct calls it a "Reply Report," suggesting it is a rebuttal to Mr. Rabinowitz's rebuttal report. (*See* ECF No. 133 at PageID 3837–38.) But then TX Direct relies on the supplementation deadline in the Scheduling Order, suggesting that it intends the "Reply Report" to be a supplemental report. (*See id.*) Given the lack of clarity, the

8

Court will assess whether the Reply Report is permissible either as a sur-rebuttal report or a supplemental report.

### A.      Sur-Rebuttal Report

If the Court considers the Reply Report a sur-rebuttal report, then it must be stricken from the record and excluded at trial.  In their Motion, Defendants write: "Although TX Direct will likely contend the Reply Report is a permissive rebuttal report to Mr. Rabinowitz's Rebuttal Report, this Court's Scheduling Order did not contemplate that Plaintiff could submit a rebuttal report to Defendants' rebuttal report." (ECF No. 138-1 at PageID 3894.)  And it is true that each of the Court's five Scheduling Orders is silent on sur-rebuttal reports.  (ECF Nos. 48, 85, 105, 117, 119.)

Likewise, Rule 26 does not address sur-rebuttal reports.  *Melnick v. TAMKO Bldg. Prods. LLC*, No. 2:19-cv-02630-JAR-KGG, 2023 WL 2664131, at *4 (D. Kan. Mar. 28, 2023) ("Affirmative and rebuttal expert disclosures are permitted under Fed. R. Civ. P. 26.  Rule 26 does not, however, contemplate the sur-rebuttal expert disclosures that Defendant requests here"); *Maker's Mark Distillery, Inc. v. Spalding Grp., Inc.*, No. 3:19-cv-00014-GNS-LLK, 2022 WL 17824427, at *11 (W.D. Ky. Dec. 20, 2022), *clarified on denial of reconsideration sub nom. Maker's Mark Distillery, PBC v. Spalding Grp., Inc.*, No. 3:19-cv-00014-GNS-LLK, 2024 WL 947538 (W.D. Ky. Mar. 5, 2024) ("Fed. R. Civ. P. 26 governs the procedure for expert reports but does not provide guidance for granting leave to serve reports in response to another party's rebuttal.").  This means that "the decision of whether to allow a party to present evidence in ... sur-rebuttal is generally committed to the trial court's discretion." *Maker's Mark Distillery, Inc.*, 2022 WL 17824427, at *11.

The parties asked the Court to extend the deadlines in the Scheduling Order five times. (ECF No. 78, 99, 104, 111, 118.) But TX Direct never asked for leave to provide a Reply Report. And none of the Court's Scheduling Orders provided for sur-rebuttal reports, Rule 26 does not provide for sur-rebuttal reports, and TX Direct never asked for leave of Court to serve, disclose, file, or use a sur-rebuttal report. Accordingly, the Court finds that, to the extent that the Reply Report is a sur-rebuttal report, it must be stricken.

The Court also declines to exercise its discretion now to give retroactive leave for TX Direct to use the Reply Report. TX Direct did not serve the Reply Report on Defendants until April 11, 2025. But Defendants provided the rebuttal report of their expert, Mr. Rabinowitz, on February 21, 2025. This means TX Direct waited 49 days to serve its surrreply, which is far too long. And the Reply Report was dated March 31, 2025. (ECF No. 127-4.) But TX Direct waited to serve the Reply Report until April 11, 2025—the final day of discovery. (ECF No. 133 at PageID 3838.)

What is more, although Federal Rule of Civil Procedure 26(a)(2)(D) does not speak to sur-rebuttal reports, it does speak to rebuttal reports. And as explained above, under Rule 26, a rebuttal is due within 30 days of the other party's expert report. *Equal Emp. Opportunity, Comm'n v. Heartland Auto. Servs., Inc.*, No. 2:12-cv-02054-STA-DKV, 2013 WL 12043555, at *14 (W.D. Tenn. July 19, 2013) (citing Fed. R. Civ. P. 26(a)(2)(D)). Given the 30-day time limit on rebuttal reports, the Court is unwilling to permit a party to serve on another party a sur-rebuttal report 49 days after receiving a rebuttal report. Not to mention, waiting until the final day of discovery to do so.[6]

---

[6] TX Direct relies on the fact that it provided the Reply Report on the supplementation deadline to argue that the Reply Report is timely. (ECF No. 133 at PageID 3848.) But as is explained next, the Reply Report is not a true supplementation.

10

B.  **Supplemental Report**

The Court next considers whether the Reply Report is properly viewed as a supplemental report.  "Rule 26 requires a party to 'supplement or correct' its disclosure if it 'learns that in some material respect the disclosure or response is incomplete or incorrect.'"  *Bentley v. Highlands Hosp. Corp.*, No. cv 15-97-ART-EBA, 2016 WL 5867496, at *4 (E.D. Ky. Oct. 6, 2016) (citing Fed. R. Civ. P. 26(e)(1)).  Even so, "the rule is not a license to freely amend expert reports to bolster a party's position."  *Id.*  (citing *Luke v. Family Care & Urgent Med. Clinics*, 323 Fed. App'x 496, 499–500 (9th Cir. 2009)).  Instead, "supplementation is limited to 'correcting inaccuracies' or 'filling interstices' in an initial disclosure."  *Id.* (citing *Munchkin, Inc. v. Playtext Prods., LLC*, 600 Fed. App'x 537, 538 (9th Cir. 2015)).

Some courts have stated that an expert may supplement a report "to respond to an opposing expert pointing out gaps in the supplementing expert's chain of reasoning."  *See United States ex rel. Griffis v. EOD Tech., Inc.*, No. 3:10-cv-204, 2024 WL 4921599, at *19 (E.D. Tenn. Oct. 2, 2024).  Even so, "Rule 26(e) does not permit supplementation of an expert report to remedy an inadequate or incomplete preparation or review by an expert in the first instance."  *Equal Emp. Opportunity, Comm'n v. Heartland Auto. Servs., Inc.*, No. 2:12-cv-02054-STA-DKV, 2013 WL 12043555, at *12 (W.D. Tenn. July 19, 2013).  Likewise, parties may not "add new analyses, opinions, or theories under the guise of supplementation," and they may not "transform a conclusory [original affirmative] report via supplementation."  *United States ex rel. Griffis*, 2024 WL 4921599, at *19 (citation omitted).  Indeed, to allow "'[Rule 26(e)] supplementation to apply whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc in docket control and amount to unlimited expert opinion preparation.'"  *K.G. by & through Doe v. Bd. of Educ. of Woodford Cnty., Kentucky*, No. 5:18-cv-0555-JMH-

11

MAS, 2022 WL 19692051, at *2 (E.D. Ky. Apr. 19, 2022) (citing *Campbell v. United States*, 470 Fed. App'x 153, 157 (4th Cir. 2012)).  The Court now turns to assess whether the Reply Report qualifies as a supplemental report.

In their Motion to Strike, Defendants provide a useful chart that points out many differences between Mr. Salsbery's Reply Report and his Initial Report.  (ECF No. 138-1 at PageID 3897–3900.)  The Court has noticed other differences between the reports as well.  And, in the end, the Court finds that the differences are stark and meaningful.  Rather than a supplementation of the Initial Report, the Reply Report is best seen as a complete overhaul of the Initial Report.   The Court will now walk through the differences that trouble the Court the most.

In both the Initial Report and Reply Report, Mr. Salsbery claims he calculated TX Direct's "diminution of value" damages.[7]  But Mr. Salsbery's Reply Report is filled with new opinions, ideas, explanations, and analyses.  For starters, in his Initial Report, Mr. Salsbery completed a single "diminution of value" calculation.  (ECF No. 124-5 at PageID 1641.)  To complete this calculation, he estimated that TX Direct would have boarded 30 new merchants a month from October 2022 through April 2024.  (ECF No. 124-5 at PageID 1642.)  And he states that he made this estimate based on "projections from management."  (*Id.*)

But then, in his Reply Report, Mr. Salsbery provided a range for TX Direct's diminution of value damages.  (ECF No. 127-4 at PageID 3472.)   To do this, Mr. Salsbery completed four diminution of value calculations.  (*See id.*)  In Mr. Salsbery's words, "[he] updated [his] model to run damage scenarios assuming 1) 15 new merchants per month, 2) 20 new merchants per

---

[7] Sometimes Mr. Salsbery claims he calculated the diminution of value of TX Direct's Wholesale Portfolio, and other times Mr. Salsbery asserts he is valuing the inability to board new merchants under the Wholesale Agreement.  (*Compare* ECF No. 124-6 at PageID 1697 *and* ECF No. 127-4 at PageID 3457, *with* ECF No. 124-5 at PageID 1645 *and* ECF No. 127-4 at PageID 3460.)  The precise intangible asset Mr. Salsbery intended to value is unclear to the Court.

month, 3) 25 new merchants per month, and 4) 30 new merchants per month." (*Id.* at PageID 3468.) And the record supports his decision to run a damages scenario assuming TX Direct would board 15 new merchants a month. Indeed, according to Mr. Salsbery, when looking at the period between January 2019 to September 2022, TX Direct added an average of 15 new merchants a month to its portfolio. (*Id.*) And yet Mr. Salsbery had access to this data when he wrote his Initial Report. (*See* ECF No. 124-5 at PageID 1642.) Even so, in his Initial Report, Mr. Salsbery did not include a diminution of value calculation based on this historical average. (*See* ECF No. 124-5.) Instead, he relied on estimates from TX Direct's upper management.

There are many other changes as well. For example, in his Reply Report, Mr. Salsbery claims to have used a "Fair Market Valuation" approach, which he asserts he adjusted for the facts here. (ECF No. 127-4 at PageID 3464.) But Mr. Salsbery's Initial Report does not discuss the fair market value of any asset. (ECF No. 124-5.) Furthermore, in his Reply Report, Mr. Salsbery frames his analysis as providing the value of an intangible asset (the inability to add new merchants) both before and after the alleged breach. (ECF No. 127-4 at PageID 3460.) In his Initial Report however, Mr. Salsbery does not discuss any before and after calculations. (ECF No. 124-5.) Even more, during his deposition, Mr. Salsbery denied performing any before and after calculations. Indeed, Mr. Salsbery was asked the following question in his deposition:

> Is it a fair statement, then, when you use a -- when you're trying to calculate diminution in value to determine damages, you look at the value of an asset before the event at issue compared to the value after the event at issue and, in this case, an alleged breach of contract?

(ECF No. 124-6 at PageID 1686.) And in response, Mr. Salsbery stated, "That's not the process that I did here, sir."[8] (*Id.*)

---

[8] Mr. Salsbery's entire response is as follows:

Also in his Reply Report, Mr. Salsbery provides his view on why a diminution of value calculation is an appropriate measure of TX Direct's alleged damages—an explanation that is missing from Mr. Salsbery's Initial Report. (*See* ECF No. 127-4 at PageID 3457–58.) In this discussion, Mr. Salsbery relies on the Litigation Services Handbook—a recognized authority in the industry. (*Id.*; ECF No. 127-1 at PageID 3272.) And he claims to have conducted a diminution of value analysis because TX Direct's business was "completely destroyed." (ECF No. 127-4 at PageID 3458.) But in his Initial Report, Mr. Salsbery did not rely on or cite the Litigation Services Handbook as an authority.[9] (ECF No. 124-5.) And the Reply Report is the first time Mr. Salsbery has claimed TX Direct's business has been destroyed. In fact, in his deposition, Mr. Salsbery described TX Direct as a "continuing business." (ECF No. 127-1 at PageID 3212.)

And, as a final point here, Mr. Salsbery explains in the Reply Report how, from his view, his analysis complies with the Development Standards from the National Association of Certified Valuators and Analysts ("NACVA").[10] (ECF No. 127-4 at PageID 3461–63.) But Mr.

---

> That's not the process that I did here, sir. What I did here was I looked at what the impact of the allegations of the breach, which is just adding the inability to add merchants. And I said assuming that they would have been able to add those merchants going forward, what is the value of those merchants that they were unable to add. So I didn't look at the actual value versus the should-have-been value. I just looked at the value of what they were unable to do, which is board additional merchants after a specific date.

(ECF No. 124-6 at PageID 1686–87.)
[9] In fact, Mr. Salsbery relied on a single piece of literature for his Initial Report—a practice aid on calculating lost profits. In contrast, Mr. Salsbery relied on nine pieces of literature in writing his Reply Report. (*See* ECF No. 127-4 at PageID 3474.)
[10] Mr. Salsbery is a member of this association, and he is required to comply with the Development Standards. (*See* ECF No. 127-1 at PageID 3227; ECF No. 127-4 at PageID 3461.)

14

Salsbery's Initial Report does not reference or discuss NACVA or its Development Standards. (ECF No. 124-5.) This is yet another explanation that is new to the Reply Report.

Mr. Salsbery also adjusted the discount rate he used in his initial calculations—both in his calculations of the "diminution of value" damages and the unpaid residuals damages. (ECF No. 127-4 at PageID 3471–72.) In the Initial Report, Mr. Salsbery used data from September 2024 to calculate the discount rate. (ECF No. 124-5 at PageID 1680.) But Mr. Rabinowitz explained how Mr. Salsbery should have used data from September 2022.[11] (ECF No. 124-10 at PageID 1767, 1774–75.) In his Reply Report, Mr. Salsbery admits that "Mr. Rabinowitz is correct that the discount rate should reflect public market data known as of the October 2022 measurement date." (ECF No. 127-4 at PageID 3467, 3469.) And so, in his Reply Report, Mr. Salsbery "updated [his] discount rate based on market data known at the time of the alleged breach." (*Id.*)

The Court has now outlined many of the differences between Mr. Salsbery's two reports.[12] And, at bottom, the differences between the Initial Report and Reply Report are substantial. As shown above, in his Reply Report, Mr. Salsbery has added analyses, opinions, explanations, and authorities—essentially transforming the Initial Report into a completely new report. And this is not proper supplementation under Rule 26(e). *See Equal Emp. Opportunity, Comm'n v. Heartland Auto. Servs., Inc.*, No. 2:12-cv-02054-STA-DKV, 2013 WL 12043555, at

---

[11] Mr. Rabinowitz gave a couple of reasons for why Mr. Salsbery should have looked to data from September 2022. He states that usage of a September 2024 data is a "critical methodological error" because "discount rates should reflect the economic conditions and risk environment as of the Measurement date." (ECF No. 124-10 at PageID 1774–75.) Mr. Rabinowitz also claims that Mr. Salsbery's usage of data from September 2024, rather than September 2022, "reinforces that Salsbery is conducting a lost profits analysis rather than a diminution in value." (*Id.* at PageID 1767.)

[12] To be clear, these are not the only differences between the reports.

\*12 (W.D. Tenn. July 19, 2013) ("Rule 26(e) does not permit supplementation of an expert report to remedy an inadequate or incomplete preparation or review by an expert in the first instance."). Accordingly, the Court must construe the Reply Report as a second affirmative expert report.

### IV.     Harmlessness Factors

As explained above, the Court finds that the Reply Report is not a proper supplemental report. Likewise, the Reply Report is not an authorized sur-rebuttal report. And so the Court treats the Reply Report as if it were an affirmative expert report, meaning that, under the applicable Scheduling Order, TX Direct needed to provide it to Defendants on or before January 24, 2025. (ECF No. 105.) And TX Direct did not comply with that deadline when it served the Reply Report on Defendants on April 11, 2025. So TX Direct has failed to comply with Rule 26. Therefore, under Rule 37, the Court needs to exclude the Reply Report unless the failure to provide the report on time was harmless or substantially justified.

As explained earlier in this Order, the Court will look to the five *Howe* factors to determine whether the failure was harmless or substantially justified. 801 F.3d 718 at 748. And for the reasons explained next, the Court finds when applying these five factors that TX Direct's failure to comply with Rule 26 here was not harmless or substantially justified.

The first factor is the "surprise to the party against whom the evidence would be offered." *Id*. And the "ability of that party to cure the surprise" is the second factor. *Id*. Both factors favor excluding the Reply Report. Defendants write: "Mr. Salsbery's deviation from the opinions he espoused in the Original Report and confirmed in his deposition was certainly a shock to Defendants." (ECF No. 138-1 at PageID 3894.) And the differences between Mr. Salsbery's reports bolsters Defendants' assertion. Given the differences between the Initial

16

Report and Reply Report as outlined in the section above, the Court finds that the Reply Report was likely a significant surprise to Defendants. And unless the Court were to reopen discovery and allow Defendants to file a *Daubert* Motion, Defendants would have no opportunity to cure the surprise except cross-examination at trial. Indeed, TX Direct disclosed the Reply Report after Defendants took Mr. Salsbery's deposition, so Defendants had no chance to ask Mr. Salsbery about the Reply Report.

The third factor, which is "the extent to which allowing the evidence would disrupt the trial" also favors excluding the Reply Report. *See Howe*, 801 F.3d 718 at 748. Given the differences between the Reply Report and the Initial Report, the Court would need to allow Defendants to depose Mr. Salsbery again. And then, in the interest of fairness, the Court would need to allow Defendants the opportunity to file a *Daubert* Motion, to which TX Direct would need the ability to respond. These added steps would cause the Court to have to move the trial date, potentially by several months. What is more, this case is nearly three years old and need not experience further delays. (*See* ECF No. 1.) Accordingly, this factor favors excluding the Reply Report.

The importance of the evidence, the fourth factor, favors allowing the Reply Report. *See Howe*, 801 F.3d 718 at 748. TX Direct argues: "Mr. Salsbery's testimony, including the clarifications in his Reply Report, is crucial to TX Direct's ability to prove its damages. Excluding this evidence would severely prejudice TX Direct." (ECF No. 133 at PageID 3846.) And TX Direct's point is well taken. Mr. Salsbery's Initial Report and Reply Report are the only pieces of evidence in the record about TX Direct's damages. But the importance of his testimony is also partially why the other factors favor excluding the Reply Report.

17

The final consideration is the "nondisclosing party's explanation for its failure to disclose the evidence." *Howe*, 801 F.3d 718 at 748. As its explanation, TX Direct writes:

> [T]he Reply Report was prepared and disclosed to respond directly to the arguments in Mr. Rabinowitz's Rebuttal Report, and it was served in compliance with the Court's scheduling order for supplementation. While Defendants note the Scheduling Order did not explicitly provide for a "rebuttal to a rebuttal," (Motion at 5), the Order did provide a deadline for "SUPPLEMENTATION UNDER RULE 26(e)(1)" (Dkt. No. 119 at 1), which the Reply Report satisfies. Such responsive expert disclosures are common and necessary for the fair development of the record.

(ECF No. 133 at PageID 3846.) But this explanation does not persuade the Court that it should allow the Reply Report. At the core of the explanation is that the Scheduling Order provides a supplementation deadline, which TX Direct asserts it met. But for the reasons discussed earlier in this Order, given the significant differences between the Initial Report and the Reply Report, the Reply Report does not qualify as a supplemental report. Furthermore, although TX Direct claims that responsive expert reports like the Reply Report are common, TX Direct has cited no case in which a court found that a report like the Reply Report here was a supplemental report. In sum, four of the five factors favor excluding the report. The Court therefore finds that the failure to disclose the report earlier was not harmless or substantially justified.

In summary, as the Reply Report is not permissible as either a sur-rebuttal report or a supplemental report, the only way it can be a proper disclosure is as an affirmative report. That means Plaintiff needed to serve the Reply Report by January 24, 2025. (ECF No. 105.) But Plaintiff waited to serve it until April 11, 2025, the final day of discovery. By that time, Defendants had taken Mr. Salsbery's deposition based on his Initial Report. And, for the reasons above, the delay in serving the Reply Report was not harmless or substantially justified.

Accordingly, the Court **STRIKES** the Reply Report from the record.[13]  This means the Court will exclude the Reply Report from its consideration in deciding the pending Motion for Summary Judgment and will exclude the Reply Report as evidence at trial.

**SO ORDERED**, this 22nd day of July, 2025.

> s/Thomas L. Parker
> THOMAS L. PARKER
> UNITED STATES DISTRICT JUDGE

---

[13] Given the number of differences between the Reply Report and Initial Report, the Court will strike the entire Reply Report.  Put simply, the Court does not find it appropriate to go line-by-line through a completely re-done report to decide what is acceptable supplementation and what is not.  This would incentivize Parties to redo their entire reports in the hopes that some changes will be allowed, which is not appropriate.  Indeed, "Rule 26(e) does not permit supplementation of an expert report to remedy an inadequate or incomplete preparation or review by an expert in the first instance."  *See Equal Emp. Opportunity, Comm'n v. Heartland Auto. Servs., Inc.*, No. 2:12-cv-02054-STA-DKV, 2013 WL 12043555, at *12 (W.D. Tenn. July 19, 2013).