IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| TX DIRECT, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:22-cv-02685-TLP-tmp ) ) |
| FIRST DATA MERCHANT SERVICES LLC and WELLS FARGO BANK, N.A., | ) ) ) |
| Defendants. | ) ) |

**ORDER GRANTING IN PART AND DENYING IN PART TX DIRECT'S MOTION IN LIMINE**

In October 2022, TX Direct, LLC ("TX Direct") sued First Data Merchant Services LLC ("First Data") and Wells Fargo Bank, N.A. ("Wells Fargo") for breach of contract. (ECF No. 1; *see* ECF No. 92.) Then, in October 2023, First Data and Wells Fargo (collectively, "Counter-Plaintiffs") brought counterclaims against TX Direct for breach of contract, fraud, and negligent misrepresentation. (ECF Nos. 55, 56; *see* ECF Nos. 93, 94.)

In April 2025, Counter-Plaintiffs moved for summary judgment ("Motion for Summary Judgment") on TX Direct's breach of contract claim and Counter-Plaintiffs' breach of contract claims. (ECF No. 125.) The Court granted the Motion for Summary Judgment on TX Direct's breach of contract claim but denied it on the counterclaims. (ECF No. 155.) Therefore, the claims left in this case are Counter-Plaintiffs' breach of contract, fraud, and negligent misrepresentation claims.

TX Direct moves this Court in limine to exclude evidence about the amount or calculation of Counter-Plaintiffs' damages related to the counterclaims. (ECF No. 148.)

1

Counter-Plaintiffs oppose the Motion. (ECF No. 149.) The Court takes up the Motion in Limine in this Order. And, for the reasons below, the Cout **GRANTS** in **PART** and **DENIES** in **PART** the Motion.

## BACKGROUND

Counter-Plaintiffs' claims in this case relate to TX Direct's recycling of MIDs.[1] Counter-Plaintiffs assert that, in doing so, TX Direct breached the contract and committed fraud. (*See* ECF Nos. 93, 94.) And in connection with this MID recycling, Counter-Plaintiffs seek three "categories" of damages: "(1) damages related to employee time spent investigating TX Direct's recycling of MIDs and creating additional controls to prevent a further breach of contract; (2) professional fees Counter-Plaintiffs paid to third parties in response to TX Direct's breach of contract; and (3) withheld residuals for the merchants TX Direct boarded onto First Data's systems using recycled MIDs." (ECF No. 149; *see also* ECF No. 148 at PageID 3934.)

But TX Direct argues that Counter-Plaintiffs have not complied with their disclosure obligations related to their alleged damages. (ECF No. 148 at PageID 3917.) And so TX Direct moves this Court in limine to preclude Counter-Plaintiffs from "introducing any testimony, documents, computations, or other evidence at trial concerning the amount or calculation of damages they seek on their Counterclaims." (*Id.* at PageID 3920.) Counter-Plaintiffs oppose the Motion.

The Court now addresses the Motion.

---

[1] The facts here are set out in the recent Order on Counter-Plaintiffs' Motion for Summary Judgment. (ECF No. 155.)

**LEGAL STANDARD**

"A motion in limine is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). To that end, "[f]ederal district courts may exclude evidence in limine pursuant to their 'inherent authority to manage the course of trials.'" *Hill v. Medical Device Business Services, Inc.*, No. 24-5797, 2025 WL 1950300, at *10 (6th Cir. July 16, 2025) (citing *Luce v. United States*, 469 U.S. 38, 40 n.4 (1984)).

**ANALYSIS**

Federal Rule of Civil Procedure 26 requires a party, as part of its initial disclosures, to provide the opposing party "a computation of each category of damages claimed" and "the documents or other evidentiary material … on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). Rule 26 also requires a party to "supplement or correct its disclosure" if the party "learns that in some material respect the disclosure … is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). In this case, the supplementation deadline was April 11, 2025. (ECF No. 119.)

And Rule 26's disclosure requirements are important to follow. Indeed, "[if] a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

To determine whether the failure was harmless or substantially justified, courts within the Sixth Circuit apply the five-factor test from *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015). Those five factors are:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the

evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe*, 801 F.3d at 748. "The factors simply lend themselves to the task at the heart of Rule 37(c)(1): separating 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (citing *Bentley*, 2016 WL 5867496, at *10).

TX Direct argues that Counter-Plaintiffs did not produce computations of their damages, and that this failure is not harmless or substantially justified. (ECF No. 148.) The Court first assesses TX Direct's argument related to Counter-Plaintiffs' first two categories of damages—the employee time spent investigating the MID recycling and creating additional controls and the professional fees Counter-Plaintiffs paid to third parties in response to the MID recycling. The Court will then turn to the third category of alleged damages—the unpaid residuals.

**I.        Categories One and Two**

About the first two categories of damages, Counter-Plaintiffs have not contested that they failed to provide TX Direct calculations of their damages in their initial disclosures. (*See generally* ECF No. 149.) The record also shows that Counter-Plaintiffs did not provide TX Direct information about these damages later in discovery. Indeed, TX Direct asked both in an interrogatory and during First Data's 30(b)(6) deposition about the damages Counter-Plaintiffs seek. (ECF No. 148 at PageID 3933, 3951.) Yet Counter-Plaintiffs still did not provide calculations, invoices, or specific dollar amounts for their first two categories of damages. (*Id.*)

Rather, as Counter-Plaintiffs explain, they provided TX Direct with their categories of damages and documents about the new controls First Data put in place. (ECF No. 148 at PageID 3933; ECF No. 149 at PageID 3995.) Counter-Plaintiffs add that, to remedy any surprise, they

4

have recently produced documents to support their damages.[2]  The documents consist of invoices showing the amounts that Counter-Plaintiffs paid to third parties.  (ECF No. 149-3.)  The invoices are from 2023 and 2024, and they show the amounts Counter-Plaintiffs paid to third parties in relation to the MID recycling.  (*Id.*; ECF No. 149 at PageID 3970.)  In fact, Counter-Plaintiffs asserted that they discovered that TX Direct was recycling the MIDs allegedly in breach of the contract in October 2023.  (ECF Nos. 55 at PageID 491; and 93 at PageID 1000.)

With that in mind, the Court agrees with TX Direct that Counter-Plaintiffs have not met their disclosure requirements.  Merely informing TX Direct of the categories of damages they seek and turning over documents about the new controls does not satisfy Counter-Plaintiffs obligations under Rule 26.  And providing invoices showing their damages at the last minute does not cut it either.  Indeed, these invoices were produced far too late.  What is more, Counter-Plaintiffs failed to provide the information when TX Direct asked about Counter-Plaintiffs' damages in the interrogatory request and the 30(b)(6) deposition.  (ECF No. 148 at PageID 3933, 3951.)

The Court will now examine whether Counter-Plaintiffs' failure to provide timely calculations or evidence of their damages for their first two damages' categories is harmless or substantially justified.  As explained earlier in this Order, the Court will look to the five *Howe* factors to answer this question.  801 F.3d 718 at 748.  In the end, the Court finds that the failure was not harmless or substantially justified.

The first factor is the "surprise to the party against whom the evidence would be offered." *Id.*  And the "ability of that party to cure the surprise" is the second factor.  *Id.*  Both factors

---

[2] Counsel for Counter-Plaintiffs explained the recent nature of this production at a pretrial conference held on July 11, 2025.

favor excluding calculations or evidence of the first two categories of damages. Until July 2025, TX Direct was in the dark as to the amount of damages Counter-Plaintiffs sought for their first two damages categories. While it is true Counter-Plaintiffs provided documents about the new controls, this is not the same as informing TX Direct of the amount of money they spent on those controls, employee investigation, and fees paid to third party. The Court therefore finds that the invoices Counter-Plaintiffs turned over in July 2025 were likely a surprise to TX Direct. And any other testimony or evidence put on at trial about the damages' calculations would also be a surprise.

As for the second factor, the Court finds that TX Direct does not have an appropriate opportunity to cure the surprise. Counter-Plaintiffs point out that, by an earlier agreement of the Parties, TX Direct planned to depose First Data employee Stephen Clark on July 15, 2025.[3] (ECF No. 149 at PageID 3969.) Counter-Plaintiffs explain that Mr. Clark has "personal knowledge regarding the investigation into TX Direct's recycling of MIDs and the remedial steps First Data was forced to take because of TX Direct's misconduct." (*Id.*) And, with this, Counter-Plaintiffs argue that "to the extent TX Direct is unclear on what steps Counterclaimants were forced to take after discovering TX Direct's recycling of MIDs, it can ask Mr. Clark." (*Id.*)

But the Court finds Counter-Plaintiffs' argument unpersuasive. For starters, it seems that Mr. Clark's testimony would be primarily about the remedial steps First Data took, not so much about the invoices or amount of money expended on the steps. And, in any event, providing the invoices just before the deposition gives TX Direct very little time to prepare. Plus, given the

---

[3] The Parties explained at a pretrial conference held on July 24, 2025, that this deposition has not yet occurred.

late disclosure, TX Direct has no opportunity to ask First Data about the invoices during a 30(b)(6) deposition or seek more discovery about the invoices before Mr. Clark's deposition.

Likewise, the third factor, which is "the extent to which allowing the evidence would disrupt the trial," also favors excluding the invoices and any other evidence of damages' calculations related to the first two categories. *See Howe*, 801 F.3d 718 at 748. Counter-Plaintiffs produced the invoices after First Data's 30(b)(6) deposition and without enough time for TX Direct to seek additional written discovery about the damages. As a result, to be fair to TX Direct, the Court would need to give TX Direct time to conduct limited additional discovery. This would mean a continuance of the trial. So this factor favors excluding the invoices and any other calculations related to the first two categories of damages.

The importance of the evidence, the fourth factor, favors allowing the evidence. *See id*. Indeed, without the evidence, Counter-Plaintiffs will be unable to prove a significant portion of their alleged damages. But the importance of his evidence is also partially why the other factors favor excluding the evidence. Because the invoices are central to their claims, that is all the more reason to turn over the specifics timely.

The final consideration is the "nondisclosing party's explanation for its failure to disclose the evidence." *Id*. This factor favors exclusion. At the pretrial conference held on July 11, 2025, Counter-Plaintiffs explained that their clients could not find the invoices and that they had to reach out to a third party to get them. But this is a weak explanation. Indeed, Counter-Plaintiffs sued about these damages in 2023. (ECF No. 55.) For them to wait to produce details about those damages until July 2025 without a more compelling reason is simply too little too late.

Counter-Plaintiffs' other explanation also does not persuade the Court.  Counter-Plaintiffs write "[i]f TX Direct believed Counterclaimants had not fully answered the discovery, it should have asked additional questions at Mr. Nicholson's deposition or filed a motion to compel."  (ECF No. 149 at PageID 3969.)  But Counter-Plaintiffs have an obligation to provide initial disclosures "without awaiting a discovery request."  Fed. R. Civ. P. 26(a)(1)(A).  And, despite Counter-Plaintiffs having this independent obligation, TX Direct still asked for this information two other times, once in an interrogatory request and once in First Data's 30(b)(6) deposition.  Yet Counter-Plaintiffs failed to provide the information.

The Court GRANTS the Motion in Limine as to these categories of evidence.  The Court will therefore exclude any testimony, documents, computations, or other evidence at trial concerning the amount or calculation of damages Counter-Plaintiffs seek in relation to their first and second categories of damages.

## II.     Category Three

The Court now turns to the third category of alleged damages—the withheld residuals.  As described above, TX Direct requests that the Court exclude evidence about Counter-Plaintiffs' damages at trial.  And in support of this argument, TX Direct asserts that Counter-Plaintiffs did not provide calculations of its damages during discovery.

In response, Counter-Plaintiffs explain that TX Direct has full awareness of how it calculates the monthly residuals.  (ECF No. 149 at PageID 3967–68.)  And Counter-Plaintiffs remind the Court that Mr. Chad Salsbery, TX Direct's damages expert, addressed the withheld residuals in his expert report.  (*Id.* at PageID 3967–68.)  Indeed, Mr. Salsbery's report shows that he calculated these withheld residuals back in January 2025.  (ECF Nos. 124-3, 124-5.)  Likewise, Counter-Plaintiffs point out that Mr. Adam Rabinowitz, Counter-Plaintiffs' rebuttal

8

expert, provided information on these withheld residuals in his February 2025 report. (ECF No. 149 at PageID 3968; *see* ECF No. 124-10.)

Thus, as much as Counter-Plaintiffs did not timely provide a calculation of the withheld residuals, the Court finds this failure harmless under the *Howe* factors. As for the first and second factors, there is little to no surprise to TX Direct on the amount of the withheld residuals. As Mr. Salsbery's report shows, TX Direct knew how to calculate the withheld residuals and had the data available to do so. (ECF No. 124-5.) What is more, Mr. Salsbery found that the amount of the withheld residuals is greater than the amount Mr. Rabinowitz claims. (*Compare* ECF No. 124-5, *with* ECF No. 124-10.) And TX Direct has had Mr. Rabinowitz's expert report since February 2025. (ECF No. 124-10.) This means the report was provided before discovery closed, which would have allowed TX Direct to cure any surprise it may have caused.

As for factor three, given the lack of surprise here, there will not be any delay in the trial by allowing evidence of the withheld residuals' calculation, so this factor favors allowing the evidence. Factor five, which looks to Counter-Plaintiffs' explanation, also favors allowing the evidence. Indeed, Counter-Plaintiffs explain that TX Direct knew how to calculate the residuals, and that Counter-Plaintiffs provided the amount of the withheld residuals with Mr. Rabinowitz's report. (ECF No. 149 at PageID 3968.) Factor four concerns the importance of the evidence. This factor cuts both ways. On one hand, the Court is not yet convinced of the relevance of this category of damages (that issue is not presently before the Court). But on the other hand, if the Court excludes the evidence, the Court cannot see another way with which Counter-Plaintiffs could prove damages.

9

In the end, at least four of the factors favor admitting evidence about the calculation of the withheld residuals. So the Court DENIES the Motion in Limine about the withheld residuals' calculation.

## **CONCLUSION**

For the reasons above, the Court **GRANTS** in **PART** and **DENIES** in **PART** TX Direct's Motion in Limine. The Court will exclude any evidence at trial about the amount or calculation of damages Counter-Plaintiffs seek in relation to their first and second categories of damages. But the Court will allow evidence related to the calculation of the withheld residuals and will address the relevance issue at trial.

**SO ORDERED**, this 27th day of July, 2025.

                                                    s/Thomas L. Parker
                                                  THOMAS L. PARKER
                                                  UNITED STATES DISTRICT JUDGE